UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Carpenters and Joiners Welfare Fund, Twin City Carpenters Pension Fund, Twin City Carpenters Apprenticeship Fund, and Twin City Carpenters Vacation Fund,

Plaintiffs,

v.

Civ. No. 02-779 (JNE/JGL)
ORDER

Sheila Wayne, Geraldine Peterson, David L. Peterson, and Midwest Sport Floors, Inc.,

Defendants.

---

Pamela Hodges Nissen, Esq., McGrann Shea Anderson Carnival Straughn & Lamb, appeared for Plaintiffs Carpenters and Joiners Welfare Fund, Twin City Carpenters Pension Fund, Twin City Carpenters Apprenticeship Fund, and Twin City Carpenters Vacation Fund.

James T. Martin, Esq., Gislason, Martin & Varpness, P.A., appeared for Defendants Sheila Wayne, Geraldine Peterson, David L. Peterson, and Midwest Sport Floors, Inc.

---

This is an action by four employee benefit plans to collect unpaid contributions pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (2000) (ERISA). The case is before the Court on plaintiffs' Motion for Partial Summary Judgment and defendants' Motion for Summary Judgment. For the reasons set forth below, the Court concludes that three of the four defendants are entitled to summary judgment.

## I. BACKGROUND

Plaintiffs in this case—the Carpenters and Joiners Welfare Fund, the Twin City Carpenters Pension Fund, the Twin City Carpenters Apprenticeship Fund, and the Twin City Carpenters Vacation Fund (Plans)—are employee benefits plans maintained for the benefit of members of a union, the Lakes and Plains Regional Council of Carpenters and Joiners (Union).

FILED JUL 22 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED
DEPUTY CLERK'S INITIALS

Defendant Geraldine Peterson (Mrs. Peterson) is a former owner of Lester Peterson Floor Service (LPFS), a sole proprietorship that installs and refinishes hardwood floors. LPFS and the Union entered into a collective bargaining agreement (CBA) in 1994. In January 2001, defendant Sheila Wayne became the owner of LPFS. Later that year, LPFS was hired to perform a project for defendant Midwest Sport Floors, Inc. (MSF), a subcontractor that was not a party to the CBA. The sole shareholder, officer, and director of MSF is Mrs. Peterson's son, David Peterson (Mr. Peterson). LPFS has not worked on any other projects during Wayne's tenure as owner.

The Plans allege that Mrs. Peterson, Wayne, MSF, and Mr. Peterson (collectively, Defendants) are jointly and severally liable for unpaid contributions for all hours worked by employees of LPFS or MSF within the jurisdiction of the CBA from April 2000 to date. The Plans have moved for summary judgment on the issue of liability, and Defendants have moved for summary judgment.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A. MSF**

The Plans' first argument is that MSF is liable for contributions under the CBA because LPFS is a sham business operation, making MSF the only employer involved in this case. In *Greater Kansas City Laborers Pension Fund v. Superior General Contractors, Inc.*, 104 F.3d 1050 (8th Cir. 1997), employee trust funds argued that a corporation that had not signed a collective bargaining agreement was liable for unpaid fringe benefit contributions because the non-signatory corporation and another corporation that had signed the collective bargaining agreement constituted a single employer. *Id.* at 1056 n.7. The Eighth Circuit rejected this argument, stating that "[t]he single employer doctrine is not relevant" in ERISA cases. *Id.* Instead, "corporate law principles govern the assessment of the corporate relationship." *Id.* Accordingly, the Court declines to consider the Plans' argument that MSF is the only employer in this case.

The Plans next argue that MSF has bound itself to the CBA by holding itself out as a union contractor. They rely on contracts entered into by MSF in which it represented that it would comply with the CBA, and MSF's agreement to perform work as a subcontractor under contracts that required the general contractors to hire union subcontractors. As to the former, the contracts indicate that MSF agreed to comply with the CBA on a per-project basis. With respect to the latter, MSF in turn subcontracted the work to a signatory of the CBA with the consent of the Union after discovering that the general contracts required union subcontractors. Viewed in

the light most favorable to Defendants, the evidence does not indicate that MSF held itself out as a union contractor.

The final issue raised by the Plans regarding MSF is whether the company is liable for unpaid contributions under the alter ego doctrine. Defendants also move for summary judgment on this point. "In general, only a party to a collective bargaining agreement is bound by its terms; however, in some instances, an employer which has not signed a labor contract may be so closely tied to a signatory employer as to bind them both to the agreement." *Crest Tankers, Inc. v. Nat'l Mar. Union of Am.*, 796 F.2d 234, 237 (8th Cir. 1986). In actions arising under ERISA, principles of corporate law determine whether a non-signatory employer is liable for unpaid contributions as the alter ego of a signatory employer:

> [T]he alter ego doctrine as developed under corporate law provides that the legal fiction of the separate corporate entity may be rejected in the case of a corporation that (1) is controlled by another to the extent that it has independent existence in form only and (2) is used as a subterfuge to defeat public convenience, to justify wrong, or to perpetuate a fraud.

*Superior Gen. Contractors*, 104 F.3d at 1055-56 (citations omitted). In this case, the parties agree that LPFS is bound to the CBA. Thus, the issue presented is whether MSF and LPFS are alter egos.

There is evidence in the record supporting MSF and LPFS are not alter egos. For instance, MSF paid LPFS $10,000 in 1999 for LPFS's work on two projects, and $7,000 for LPFS's work on one project in 2001. On the other hand, there is also evidence supporting the Plans' position. For example, MSF paid union dues on behalf of LPFS employees on at least three occasions from 1999 to 2001. Letters accompanying at least two of the applications for union membership were written by Mr. Peterson on LPFS stationery. According to Wayne, LPFS's employees used MSF's tools and equipment on the only project performed by LPFS

since January 2001. In addition, Wayne testified she did not buy any materials for that project. This record could support a finding in favor of either side on the issue of whether MSF and LPFS are alter egos. Accordingly, the Court denies the Plans' and Defendants' motions with respect to MSF.

**B. Mr. Peterson**

The parties dispute whether MSF's corporate veil should be pierced to hold Mr. Peterson personally liable for any contributions owed by MSF. Whether to pierce a corporate veil is an issue governed by state law. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003); *Stoebner v. Lingenfelter*, 115 F.3d 576, 579 (8th Cir. 1997). The parties agree that the applicable test is found in *Stoebner*:

> Under Minnesota law, deciding whether to allow a corporate veil to be pierced requires a court to 1) analyze whether the corporation functioned as the mere instrumentality of the principals a party is attempting to reach by piercing the corporate veil, and 2) determine whether injustice or fundamental unfairness would occur if the corporate veil were left intact. Whereas the first prong involves questions of fact, the second prong raises equitable considerations.

115 F.3d at 579 (citations omitted). "A number" of the following factors must be present to satisfy the first prong: (1) insufficient capitalization for purposes of corporate undertaking; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) insolvency of debtor corporation at time of transaction in question; (5) siphoning of funds by dominant shareholder; (6) nonfunctioning of other officers and directors; (7) absence of corporate records; and (8) existence of the corporation as a facade for individual dealings. *Minn. Power v. Armco, Inc.*, 937 F.2d 1363, 1367 (8th Cir. 1991).

Some of the factors just listed are present in this case. For example, in response to the Plans' interrogatory asking Defendants to identify "all annual and special shareholder and board meetings held by [MSF] since its incorporation," Defendants stated that "[t]he company does not

have a record of specific times when [Mr. Peterson] had 'meetings' concerning the business." Some factors are not present in this case. For instance, there is no evidence that MSF was insufficiently capitalized or insolvent. Given the mixed evidence, the Court cannot determine as a matter of law whether MSF functioned as the mere instrumentality of Mr. Peterson. The Court nevertheless concludes that Mr. Peterson is entitled to summary judgment because the Plans have failed to satisfy their burden with respect to the second prong of the veil-piercing analysis.

In their memorandum in support of their motion, the Plans argue that "[b]ecause [Mr. Peterson] has failed to observe the foregoing corporate requirements, the corporate veil should be pierced and [Mr. Peterson] should be held personally liable to the fringe funds for unpaid contributions." This argument ignores the second prong of the test applicable under Minnesota law. The Plans also offer the following argument:

> It would be fundamentally unfair to allow [Mr. Peterson] to act as a union contractor, employing union members, when it was convenient, and availing himself of the benefit of being a union contractor, without making him liable for the debts of the corporation. It is not fair to limit [the Plans] to the assets of [MSF], when [Mr. Peterson] has been the single controlling officer and owner of the company, who has perpetrated the fraud upon the Union, [the Plans], and the industry as a whole.

This argument essentially restates the Plans' argument as to why MSF should be held liable for unpaid contributions, but it fails to explain why injustice or fundamental unfairness would occur if MSF's corporate veil remains intact. That the company is owned and controlled by one person provides no basis for piercing its veil. Minnesota law does not require corporations to have a minimum number of shareholders, *see* Minn. Stat. § 302A.011, subd. 6a (2002), nor does Minnesota law require corporations to have more than one director, Minn. Stat. § 302A.203 (2002). The Plans' conclusory statements of unfairness and injustice are insufficient to carry

their burden with respect to the second prong. The Court therefore grants Defendants' motion insofar as it seeks summary judgment for Mr. Peterson.

### C. Mrs. Peterson and Wayne

It is undisputed that LPFS has made all contributions for work performed since April 2000. At the motion hearing, the Plans conceded that Mrs. Peterson and Wayne are not liable for contributions that may be due from MSF. Accordingly, Mrs. Peterson and Wayne are entitled to summary judgment.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. The Plans' Motion for Partial Summary Judgment [Docket No. 12] is DENIED.

2. Defendants' Motion for Summary Judgment [Docket No. 19] is GRANTED IN PART and DENIED IN PART.

3. The Plans' claims against Defendants Mr. Peterson, Mrs. Peterson, and Wayne are DISMISSED.

Dated: July 21, 2003

JOAN N. ERICKSEN
United States District Judge